```
               IN THE UNITED STATES DISTRICT COURT
               FOR THE NORTHERN DISTRICT OF TEXAS
                        FORT WORTH DIVISION
```

VINEWOOD CAPITAL, LLC              §
                                   §
v.                                 §   CIVIL ACTION NO. 4:06-CV-316-Y
                                   §
DAR AL-MAAL AL-ISLAMI              §
TRUST, ET AL.                      §

## OPINION AND ORDER ON MOTION FOR DECLARATION THAT COUNSEL IS NOT SUBJECT TO DISQUALIFICATION

Before the Court is Defendants' Motion for Declaration that Counsel is Not Subject to Disqualification (doc. #212). After review, the Court concludes that no conflict of interest exists in this case, and that defense counsel's continued involvement in this case is not, in and of itself, a breach of fiduciary duty. Thus, the motion for declaration will be granted.

I. Background

This case has a long and complicated procedural history, both before its filing and since. The events giving rise to this suit began in April 2004, when Wendel Pardue and Laird Fairchild filed suit in a Texas state court ("the Texas litigation") alleging that they had been wrongfully terminated by their former employer, Overland Realty Capital, LLC ("Overland"). Defendant Ziad Rawashdeh, as a director and officer of Overland, was named as a defendant in the Texas litigation. A meeting was held in Geneva, Switzerland, to negotiate a settlement of the Texas litigation. Pardue and Fairchild, as well as James Conrad, another former Overland employee, and defendant Khalid Abdulla-Janahi, attended this meeting. During the negotiations, a proposal was made by Pardue and Fairchild under which Pardue, Fairchild, and Conrad would create plaintiff Vinewood Capital, LLC ("Vinewood"), a new real-estate investment company. Vinewood was

to be the exclusive company used by the Dar Al-Maal Al-Islami Trust ("DMI") and related entities for real-estate ventures in the U.S. DMI was to loan Vinewood $2.5 million and make an initial cash payment of $1.5 million as startup capital for Vinewood.

Eventually, the Texas litigation was settled via a written agreement ("the Settlement Agreement"). The Settlement Agreement does not mention either the creation of Vinewood or Pardue and Fairchild's proposal. To the contrary, the proposal is completely omitted and various provisions state that the written Settlement Agreement is the parties' entire agreement and that no prior agreements survive the settlement. Vinewood filed suit in a Texas state court in May 2006 claiming that Defendants failed to adhere to the proposal and the later representations by Janahi and Rawashdeh that DMI would do business with Vinewood. That suit is now before this Court upon Defendants' removal.

DMI has since filed counterclaims against Vinewood, as well as Fairchild's attorney Geoffrey Harper. DMI avers that after the Settlement Agreement failed to provide for the creation of Vinewood or the provision of startup capital, Fairchild went about disparaging DMI and its affiliates to members of the media. In response, DMI and related entities, including Islamic Investment Company of the Gulf (Bahamas), Ltd. ("IICGB"), initiated an arbitration asserting that Fairchild's comments to the media violated the Settlement Agreement's confidentiality and non-disparagement provisions.

Harper represented Fairchild in the arbitration. And, according to DMI, Harper has made further disparaging comments and disclosures to the media. Apparently, the United States Department of Justice has begun an investigation into DMI-related entities' tax practices and

Fairchild has assisted the government in the investigation. A grand jury was convened in the United States District Court for the District of Massachusetts. When DMI sought discovery of Fairchild's statements to the government as part of the IICGB arbitration, the government filed a motion in the District of Massachusetts to stay such discovery pending the grand jury investigation. This motion was filed under seal. Nevertheless, Harper disclosed the motion to the *Wall Street Journal.* And while the extent to which he did so is not clear from the allegations, Harper also appears to have discussed the general history of this case, including the Texas litigation, and to have made further comments to various newspapers implying that DMI and related entities were being investigated beyond their tax practices. Based on these comments, DMI filed its counterclaims of business disparagement and tortious interference.

In December 2008, Counterdefendants filed their first motion to dismiss DMI's counterclaims. In ruling on the motion, this Court concluded that DMI had failed to sufficiently allege special damages with regard to its business-disparagement claim, as required by Texas substantive law and Federal Rule of Civil Procedure 9(g). This Court further concluded that DMI had not sufficiently pleaded its claim for tortious interference. But rather than dismiss the counterclaims, the Court granted DMI leave to amend its claims. The Court then denied Counterdefendants' second motion to dismiss (doc. #179).

About the same time as this ruling, a number of discovery-related disputes began to plague this case, delaying its progress. The parties did not timely notify the Court of the mediator they chose to mediate the case in September 2009 (doc. #153). After the Court issued a show-cause order, the parties provided such notice and

informed the Court that they would participate in mediation during September 2009 as ordered by the Court (docs. #110, 154).

Rather than do so, however, Defendants filed an emergency motion to reschedule the mediation and to clarify the order of referral to mediation (doc. #166). This motion was filed on September 17, after more than half of the month in which the mediation was to occur had expired. According to Defendants, the order of referral was ambiguous as to whether defendants Khalid Abdulla-Janahi and Ziad Rawashdeh were to personally appear at the mediation. But the order of referral clearly required that "named parties shall be present during the entire mediation process." And to the extent that the order was ambiguous, this Court concluded that Defendants' delay in seeking clarification of an order that had been entered over a year before they filed their motion was inexcusable and, therefore, awarded to Vinewood fees and costs associated with the motion to reschedule and the mediation.

Relatedly, a dispute arose regarding the availability of Abdulla-Janahi and Rawashdeh, who reside in Bahrain and Switzerland, respectively, for depositions. Rather than negotiate a resolution to the issue of depositions, Plaintiffs filed motions to compel these defendants' attendance at depositions in Texas, despite the clear implication of the motion to reschedule the mediation that Abdulla-Janahi and Rawashdeh would not be able to make it to Texas in September 2009. The Court denied the motions to compel.

The mediation and depositions were further delayed when Abdulla-Janahi and Rawashdeh were not able to secure visas promptly. Plaintiffs filed motions for sanctions based on these defendants' unavailability. The Court ordered counsel for all parties to meet and

4

confer to resolve the issue of the availability of Abdulla-Janahi and Rawashdeh and its impact on the scheduling of the mediation and on depositions.

Moreover, in October 2009, Defendants filed a motion for a broad protective order generally applicable to discovery materials in this case. This case is already replete with sealed orders. And as this Court explained in overruling Defendants' objection to the magistrate judge's order denying entry of their proposed protective order, there are already a number of measures in place--including a prior judgment of this Court, an order of the United States District Court for the District of Massachusetts, orders entered in two related arbitrations, and a provision in the Settlement Agreement--that ensure a sufficient level of confidentiality.

At issue in the current motion is the most exasperatingly dilatory act yet indulged by the parties. After this action had been pending for well over three years, Vinewood filed suit in the 191st Judicial District Court, Dallas County, Texas, against all of Defendants' counsel. According to the petition, attorneys James McGuire and Tim McCarthy of the law firm Sheppard, Mullin, Richter & Hampton, LLP ("Sheppard Mullin"), who currently represent Defendants in this case, were briefly engaged by Vinewood in 2005 to draft documents, aid in the development of Vinewood's business plan, and ensure Vinewood's compliance with state and local law. Vinewood allegedly provided McGuire and Sheppard Mullin confidential and proprietary information in the course of seeking legal advice. Vinewood insists that McGuire, McCarthy, and Sheppard Mullin, as well another firm representing Defendants, Cox Smith Mathews, Inc. ("Cox Smith" and, collectively, "defense counsel"), are using this

information against Vinewood and, more specifically, are using the information to obtain an unfair advantage in this litigation. The case has since been removed to the United States District Court for the Northern District of Texas, Dallas division, under cause number 3:09-CV-2459-L ("the Dallas Suit").

Defendants filed an emergency motion to stay in this Court, noting that, according to Vinewood, any additional legal work rendered by defense counsel in this case further breaches the fiduciary duty those counsel owe to Vinewood as a result of the brief attorney-client relationship in 2005. The Court granted a temporary stay to facilitate consideration of Defendants' other motion--a motion to declare that defense counsel are not disqualified from this case. It is the merits of that motion to which the Court now turns.

II. Analysis

Vinewood offers two responses to the motion to declare not disqualified. First, Vinewood points out that it has not sought to have defense counsel disqualified and does not intend to do so. Thus, Vinewood insists, there is no case or controversy. This is a far too myopic view of the case-or-controversy requirement and this Court's authority to render declaratory relief. As the factual basis of the Dallas Suit, Vinewood has alleged that defense counsel have used confidential information acquired through their attorney-client relationship with Vinewood in representing Defendants in this suit. Regardless of the fact that the Dallas Suit is cast as a claim for breach of fiduciary duty and that no formal motion has been filed by Vinewood seeking the disqualification of defense counsel, these facts, if established, would clearly be a basis for disqualifying these firms

from representing Defendants in this case. And if these facts were established, this Court could not ignore the concomitant conclusion that a conflict of interest exists in this case. *See In re Am. Airlines*, 972 F.2d 605, 611 (5th Cir. 1992) (stating that "the district court has the duty and responsibility of supervising the conduct of attorneys who appear before it" and is "*obliged* to take measures against unethical conduct") (quoting *Woods v. Covington County Bank*, 537 F.2d 804, 810 (5th Cir. 1976) and *Kevlik v. Goldstein*, 724 F.2d 844, 847 (1st Cir. 1984)) (emphasis in *Am. Airlines*). As discussed below, an attorney is subject to disqualification from his current representation if that representation is substantially and adversely related to his representation of a former client, or there is a reasonable probability that the current representation will involve disclosure of the former client's confidential information. Any finding that defense counsel here are using against Vinewood in this case confidential information obtained through their attorney-client relationship with Vinewood would implicitly amount to a finding that a conflict of interest, in both of these forms, exists in this case.

Moreover, Defendants have produced evidence that Vinewood regards continuing involvement by defense counsel in this case as a continuation of the breach of fiduciary duty alleged in the Dallas Suit. Simply put, it is rather obvious that a suit alleging that the actions of defense counsel in this case amount to a breach of fiduciary duty would give rise to a controversy as to whether the alleged breach disqualifies these firms from continuing as defense counsel and whether doing so exposes them to additional liability in the Dallas Suit. Vinewood's arguments to the contrary are at best

artificial and contrived. Defendants are not simply seeking a declaration that defense counsel are not subject to disqualification, but seek a ruling that defense counsel's continued involvement in this case will not expose counsel to additional liability in the Dallas Suit so that, as a practical matter, they are truly free to continue to represent Defendants. Vinewood's filing of the Dallas Suit threatens to deprive Defendants of counsel of their choice, an injury that presents a justiciable controversy. *See FDIC v. United States Fire Ins. Co.*, 50 F.3d 1304, 1316 (5th Cir. 1995) (noting the right to counsel of one's choice must be considered in a court's decision on a motion to disqualify).

Indeed, Vinewood's other argument against this Court's issuing a declaration that defense counsel are not subject to disqualification is that such a ruling could impact the merits of the Dallas Suit. Vinewood's apprehension that a decision on Defendants' motion could impact the Dallas Suit, which ostensibly Vinewood believes presents a justiciable controversy, belies its claim that Defendants' motion does not present such a controversy. And regardless of any impact a ruling by this Court on Defendants' motion might have on the Dallas Suit, this case has been pending for almost four years with no appreciable progress toward a resolution. A trial date has not even been set. The Dallas Suit is based on an alleged conflict of which plaintiff Vinewood has been aware since it filed this suit. In its pleading in the Dallas Suit, Vinewood claims to have been "shock[ed]" when Sheppard Mullin appeared as counsel for Defendants, which the firm did in May of 2006. Vinewood alleges, in the Dallas Suit, that Sheppard Mullin and Cox Smith proceeded "[t]hrough the course of several years" to use Vinewood's confidential information against it. Having by its

own admission delayed in acting upon the alleged conflict of interest for several years, despite being aware of the potential conflict since the outset of this case, Vinewood would now have this already protracted litigation delayed further while the newly-filed Dallas Suit runs its course.

Defendants argue that Vinewood's delay waives any claim it might have based on defense counsel's actions in this case. Prior to addressing waiver, the Court first must address whether a conflict exists. This is made somewhat more difficult given the manner in which the potential for a conflict and disqualification were raised. The party seeking to have an attorney disqualified generally has the burden to show that disqualification is warranted. *See Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 646 F.2d 1020, 1028 (5th Cir. 1981). Yet in this case the potential for a conflict was raised in a separate suit that is not pleaded as a claim for disqualification and the motion now before the Court broadly seeks a declaration that defense counsel are not subject to disqualification without specifying the specific ground or rule on which disqualification might be based. Nevertheless, Vinewood, as the party who could seek disqualification in this suit and that has alleged that defense counsel has acted in violation of their attorney-client relationship with Vinewood in the Dallas Suit, has had an opportunity to specify any grounds for finding a conflict of interest. Vinewood was, of course, in control of its own pleadings in the Dallas Suit, in which it essentially raised the issue of defense counsel's alleged actions in conflict of interest. And Vinewood had the opportunity to respond to Defendants' motion for declaration. Thus, the Court will regard Vinewood as having the burden.

A court's adjudication of a motion to disqualify is guided, but not controlled by, local and national ethical canons. *See United States Fire Ins. Co.*, 50 F.3d at 1316. Lawyers who practice before the Northern District of Texas are subject to the Texas Disciplinary Rules of Professional Conduct. *See* N.D. Tex. Loc. R. Civ. P. 83.8(e). Texas Disciplinary Rule 1.09 states:

> Without prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client:
>
> (1) in which such other person questions the validity of the lawyer's services or work product for the former client;
>
> (2) if the representation in reasonable probability will involve a violation of Rule 1.05 [(which governs the use of confidential information)]; or
>
> (3) if it is the same or a substantially related matter.

There is no indiction, either in the motion for declaration or in the pleadings in the Dallas Suit, that defense counsel are attacking the work they did for Vinewood as part of their representation of Defendants in this suit. Rather, Vinewood complains that it provided these firms with confidential information during their attorney-client relationship and that the firms are using that information against it in this case. Thus, it is subsection (2) and (3) that are at issue.

Under Texas Rule 1.09(3), the related provision of the ABA Model Rules of Professional Conduct, and the common law that they embody, an attorney is disqualified on the ground of former representation

10

of an adverse party if: "1) an actual attorney-client relationship [existed] between the moving party and the attorney he seeks to disqualify and 2) a substantial relationship [exits] between the subject matter of the former and present representations." *In re Am. Airlines*, 972 F.2d 605, 614 (5th Cir. 1992); *see id.* at 615 n.2 (characterizing Texas Rule 1.09(3) and ABA Model Rule 1.09 as "identical . . . in all important aspects"); *see id.* at 616-17 (discussing origins of the Texas Rule 1.09 and ABA Model Rule 1.09). There is an irrebuttable presumption that confidential information was provided during the former representation. *See id.* at 614.

There is no dispute that at least Sheppard Mullin formed an attorney-client relationship with Vinewood. As for Cox Smith, Vinewood alleges in the Dallas Suit that it was provided confidential information, although there is no allegation, in either the Dallas Suit or in the briefing of the motion to declare, that Cox Smith and Vinewood formed an attorney-client relationship. Nevertheless, Cox Smith's briefing of the motion focuses on waiver, which assumes the existence of an attorney-client relationship and a conflict that can be waived. Therefore, the Court will analyze the motion as if both Cox Smith and Sheppard Mullin formed an attorney-client relationship with Vinewood. *Cf. id.* at 614 n.1 (noting the irrebuttable presumption that all attorneys in the firm involved in the former representation received the former client's confidential information).

The issue, then, is whether Sheppard Mullin and Cox Smith's representation of Vinewood is "substantially related" to its current representation of Defendants. *See id.* at 614. "[A] substantial relationship may be found only after [the party claiming a conflict] delineates with specificity the subject matters, issues and causes of action common to prior and current representations and the court engages in a painstaking analysis of the facts and precise application of precedent." *Id.* (quoting *Duncan v. Merrill Lynch, Pierce, Fenner & Smith*, 646 F.2d 1020, 1029 (5th Cir. 1981)). Again, the manner in which the issues of conflict and disqualification were presented--by a motion to declare--makes the analysis a bit awkward because the party seeking disqualification bears the burden of proof. But, again, Vinewood essentially raised these issues by filing the Dallas Suit and was afforded an opportunity to brief the issues in this Court. Vinewood did not identify any specific subject, issue, or cause of action in this case that is related to its attorney-client relationship with either Sheppard Mullin or Cox Smith.

Nor is one apparent. In the Dallas Suit, Vinewood alleges that it engaged Sheppard Mullin for assistance with "draft[ing] documents, aid[ing] in its business plan, and to ensure compliance with various state and federal laws." At issue in this case are certain representations allegedly made by Defendants regarding real-estate investments that, generally, were to be arranged by Vinewood and funded by Defendants. Defendants have filed counterclaims for tortious interference with business relationships and business

12

disparagement based on statements made by one of Vinewood's attorneys, Geoffrey Harper. There is nothing before this Court to indicate that the subject matter of this suit relates in any way, let alone substantially, to the areas in which Sheppard Mullin and Cox Smith briefly provided legal counsel to Vinewood.

Any claim to disqualification by Vinewood under Texas Rule 1.09(2) fails for similar reasons. Texas Rule 1.09(2) prohibits an attorney from representing a client when there is a "reasonable probability" that the representation will involve the disclosure of a former client's confidential information. Again, Vinewood did not point out, in either the briefing of the motion for declaration or the pleadings in the Dallas Suit, any specific instance of overlap between the subject matter of its relationship with Sheppard Mullin and Cox Smith and the subject matter of this suit. Nor did Vinewood point out any specific area in which defense counsel had, or with reasonable probability will, disclose its confidential information to Defendants. *Cf. Duncan*, 646 F.2d at 1032 (stating that a party may disqualify counsel "either by establishing that the present and previous representations are substantially related or by pointing to specific instances where it revealed relevant confidential information regarding its practices and procedures"). And, again, there is no apparent relation between Sheppard Mullin and Cox Smith's former representation of Vinewood and the subject matter of this case.

Finally, ABA Model Code of Professional Conduct Canon 9 requires attorneys to avoid "even the appearance of impropriety." *In re Corrugated Container Antitrust Litigation*, 659 F.2d 1341, 1345 (former 5th Cir. 1981). But even disqualification under Canon 9 must be based on a "specifically identifiable appearance of improper conduct." *Id*. at 1345. Vinewood has pointed out no such instance of conduct that came about because of Sheppard Mullin and Cox Smith's former representation of it. Indeed, given the delay of Vinewood in raising the issues of conflict and these firms' use of confidential information and the lack of any specific allegations regarding the relationship between this case and that representation or any specific instances of misconduct, to disqualify the firms now would create a greater appearance of impropriety than their continued representation of Defendants. *Cf. id.* at 1349 (noting that there "may be some situations where the client has so clearly consented that disqualification would raise more public suspicion than it would quell"); *United States Fire Ins. Co.*, 50 F.3d at 1316 (noting that delay or disadvantage caused by disqualification of an attorney based on the appearance of impropriety itself may create public suspicion of both the bar and the judiciary).

Unlike violations of other ethical rules, the United States Court of Appeals for the Fifth Circuit has stated that a violation of Canon 9 cannot be waived by the former client's delay in seeking disqualification. *See In re Corrugated Container*, 659 F.2d at 1349. This conclusion was based on the rationale that Canon 9 protects

against "public suspicion of the legal profession," and not just the rights of the former client. *See id.* at 1349. But since *In re Corrugated Container*, the Fifth Circuit has noted that Canon 9's "appearance of impropriety" language has been omitted from the disciplinary rules. *See In re Am. Airlines*, 972 F.2d at 616. The Fifth Circuit explained that the substantial-relationship test protects two interests of the former client. *Id.* at 618. First, the test protects the former client's confidential information. *Id.* Second, the test ensures an attorney's loyalty to the former client, which was the interest most directly protected by Canon 9's "appearance of impropriety" language anyway. *See id.* 616-618 (discussing Canon 9 and the substantial-relationship test); *see id.* at 618 (citing cases that concluded that the public's confidence in the legal system is undermined when an attorney violates his duty of loyalty to a client); *see id.* at 619 (noting that Canon 9 was primarily interpreted as a way to protect a client's interest in his attorney's loyalty). That is, the concerns that underlie the substantial-relationship test are that the attorney should maintain his former client's confidences and maintain his loyalty to his former client; "not the public interest in lawyers avoiding 'even the appearance of impropriety.'" *Id.* at 616, 618.

And a conflict based on the substantial relationship between current and former representation can be waived by the former client's delay for an extended amount of time in asserting the conflict. *Abney v. Wal-Mart*, 984 F.Supp. 526, 530 (E.D. Tex. 1997).

Defendants cite a host of cases demonstrating that the nearly four-year delay by Vinewood in complaining about the involvement of Sheppard Mullin and Cox Smith waives any claim it might have had to disqualify these firms. *See Microsoft Corp. v. Commonwealth Scientific and Indus.*, No. 6:06 CV 549, 2007 WL 4376104, at *9 (E.D. Tex. Dec. 13, 2007) (concluding that nearly six-month delay in seeking disqualification waived the claim); *see also City of El Paso v. Soule*, 6 F. Supp. 2d 616, 621 (W.D. Tex. 1998) (noting that implied waivers of a motion to disqualify have been found based on delays of one to two years); *Abney*, 984 F. Supp. at 530 (concluding that a claim to disqualification was waived due to one-year delay in asserting the claim and citing cases finding waiver based on delays ranging from one to two and a half years). And a finding of waiver is particularly appropriate when, as in this case, the attempt at disqualification appears abusive or is being used as a delaying tactic. *See Atasi Corp. v. Seagate Tech.*, 847 F.2d 826, 832 (Fed. Cir. 1988); *see also United States Fire Ins. Co.*, 50 F.3d at 1315 (stating that because the former client offered only a "tortured justification" for disqualification, the request was more suggestive of a tactic to delay and harass than a conscientious professional concern). Not only did Vinewood wait for almost four years to assert defense counsel's violation of their duty to Vinewood as a former client, but Vinewood does not even attempt to explain this delay. And both sides in this case have engaged in delay tactics and

practices that have hindered the resolution of this case. The Dallas Suit appears to be just the latest.

Although some courts discuss a former client's waiver of a conflict as occurring only through "informed consent" after "full disclosure" of the facts creating the conflict, others recognize waiver based on delay as an alternative to such consent. *Compare Cox v. Am. Cast Iron Pipe Co.*, 847 F.2d 725, 729 (11th Cir. 1988) (outlining consent and waiver based on delay separately) *with Woolley v. Sweeney*, No. 3:01-CV-1331-BF, 2003 U.S. Dist. LEXIS 8110, at *21 (N.D. Tex. May 13, 2003) ("[F]or any waiver of conflicts of interest to be effective, the waiver must be made with 'informed consent' based on 'full disclosure.'"); *also cf. In re Am. Airlines*, 972 F.2d at 617 (discussing use of disciplinary rules in disqualification context) *and United States Fire Ins. Co.*, 50 F.3d at 1314 (noting that local and national ethical canons provide guidance in adjudicating a motion to disqualify but are not controlling). Even assuming some degree of disclosure to inform the former client of the conflict is necessary to trigger the client's obligation to assert the conflict or risk waiving it based on delay, ample information was available to Vinewood to notify it of the potential conflict in this case. "Informed consent requires that the client or former client have reasonably adequate information about the material risks of such representation to that client or former client." *Woolley*, 2003 U.S. Dist. LEXIS at *20-21 (quoting RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 122 (2002)). Indeed, Vinewood apparently has enough information regarding defense counsel's actions to file the Dallas Suit, alleging that the firms have and are taking actions contrary to those firms' attorney-client relationship with Vinewood.

And Vinewood acknowledges that these actions have been ongoing for years and, by noting its shock at Sheppard Mullin's appearance on behalf of Defendants when this suit began, Vinewood implies that it was aware of the potential for a conflict since the outset of this case. Vinewood is both the *plaintiff* in this case and the former client of Sheppard Mullin and Cox Smith. Hence, Vinewood has been well aware of the subject matter of this suit and of the former representation for years. If there were any overlap between the two, or any indication that the firms were sharing Vinewood's confidential information with Defendants, Vinewood should have sought relief long ago. Because it did not, any claim to disqualify Sheppard Mullin or Cox Smith from representing Defendants in this case has been waived.

III. Conclusion

In light of the foregoing, the Court GRANTS the motion for declaration. The Court concludes that no conflict of interest exists in this case and, in any event, any claim that Vinewood had to disqualify Sheppard Mullin or Cox Smith from representing Defendants in this case is waived. As a corollary to the former conclusion, the Court further concludes that Sheppard Mullin and Cox Smith's continued representation of Defendants in this case does not, in and of itself, constitute a conflict of interest or breach of fiduciary duty. The Court makes no decision as to the legal implications of proof in the Dallas Suit that either firm actually used Vinewood's confidential information against it.

SIGNED March 25, 2010.

_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE